UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| DARYL LYNN HIGDON, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Nos. 2:12-CR-104-RLJ-MCLC-1 |
| | ) | 2:16-CV-246-RLJ |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

Before the Court is Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 30].[1] He bases his request for relief on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague [*Id.*]. The United States filed a response in opposition on August 17, 2016 [Doc. 34]; Petitioner replied in turn on September 12, 2016 [Doc. 37]. For the reasons that follow, Petitioner's § 2255 motion [Doc. 30] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

**I. BACKGROUND**

Law enforcement officers found Petitioner in possession of a firearm and various ammunitions [Presentence Investigation Report (PSR) ¶¶ 7–8]. He later pled guilty to possessing a firearm and ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1) [*Id.* ¶ 1–3]. Based on a prior North Carolina conviction for discharging a weapon into occupied property [*Id.*

---

[1] On February 11, 2016, Federal Defender Services of Eastern Tennessee ("FDSET") was appointed for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based on the *Johnson* decision. *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). Consistent with that appointment, FDSET field the instant § 2255 motion [Doc. 30].

¶ 32], a prior Oklahoma conviction for assault and battery with a dangerous weapon [*Id.* ¶ 37], and a prior Oklahoma conviction for possessing marijuana with intent to distribute [*Id.* ¶ 41], Petitioner was deemed an armed career criminal subject to the ACCA's enhanced fifteen-year mandatory minimum. In accordance with that designation, this Court sentenced Petitioner to 180 months' imprisonment on April 29, 2013 [Doc. 23]. No appeal was taken, and Petitioner's conviction became final for purposes of § 2255(f)(1) on May 13, 2013, at expiration of time to file an appeal. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (an unappealed judgment of conviction becomes final when the fourteen-day period for filing a direct appeal has elapsed).

More than three years later—on June 16, 2016—Petitioner filed the instant petition challenging his ACCA-enhanced sentence in light of the *Johnson* decision [Doc. 30].

## II.  TIMELINESS OF PETITION

Section 2255(f) places a one-year statute of limitations on all petitions for collateral relief under § 2255 running from either: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). Supreme Court precedent makes clear that *Johnson*'s invalidation of the ACCA residual clause amounted to a new rule made retroactively applicable on collateral review. *See Welch v. United States*, 136 S. Ct. 1257, 1265
2

(U.S. 2016) ("*Johnson* is . . . a substantive decision and so has retroactive effect . . . in cases on collateral review."); *In re Windy Watkins*, 810 F.3d 375, 380–81 (6th Cir. 2015) (finding *Johnson* constitutes a new substantive rule of constitutional law made retroactively applicable on collateral review and thus triggers § 2255(h)(2)'s requirement for certification of a second or successive petition). Petitioner submitted the instant petition within subsection (f)(3)'s window.

### III. STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

### IV. ANALYSIS

Petitioner articulates as single ground for collateral relief: arguing that his prior North Carolina conviction for unlawful discharge of a weapon into occupied property no longer qualifies as a violent felony after the *Johnson* decision and that, without that conviction, he no longer qualifies as an armed career criminal subject to ACCA enhancement [Doc. 30].

#### A. Propriety of ACCA Enhancement After the *Johnson* Decision

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug

offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (emphasis added). The provision defines "serious drug offense" as any "offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). The Act goes on to define "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). Only the third portion of the above definition—the residual clause—was held to be unconstitutionally vague by the Supreme Court in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did not call into question the remainder of the ACCA's definition of violent felony—the use-of-physical-force and enumerated-offense clauses. *Id.*; *United States v. Priddy*, 808 F.3d 676, 682–83 (6th Cir. 2015). Nor does *Johnson* disrupt the use of a defendant's prior serious drug offenses as an independent form of ACCA predicate conviction. *See, e.g.*, *United States v. Smith*, No. 10-CR-20058, 2015 WL 5729114, at *9–13 (E.D. Mich. Sept. 20, 2015) (noting that *Johnson* does not affect a defendant's categorization as an armed career criminal based on his or her prior serious drug offenses).

Petitioner does not contest that his prior Oklahoma convictions for assault and battery and possession of marijuana with intent to distribute remain predicate offenses after the *Johnson* decision. As such, the validity of Petitioner's sentence depends on whether his prior North Carolina conviction remains a violent felony under one of the unaffected provisions of §

4

924(e)(2)(B). *See, e.g.*, *United States v. Ozier*, 796 F.3d 597, 604 (6th Cir. 2015) (denying petition where conviction qualified as a predicate offense independent of the residual clause), *overruled on other grounds by Mathis v. United States*, 136 S. Ct. 2243, 2251 n. 1 (2016). To determine whether that offense so qualifies, the Court must first identify the precise crime of conviction by employing a "categorical approach," looking "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Descamps v. United States*, 133 S. Ct. 2276, 2283, 2285 (2013).

For purposes of § 924(e)(2)(B)(i), "the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010). The clause further requires that such force be used "against the person of another." 18 U.S.C. § 924(e)(B)(2)(i). The Court must look to the "minimum conduct criminalized" to determine whether North Carolina General Statute § 14-34.1 categorically satisfies these requirements. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013).

At the time that Petitioner committed the offense, North Carolina defined discharge of a weapon into occupied property as follows:

Any person who willfully or wantonly discharges or attempts to discharge:

(1) Any barreled weapon capable of discharging shot, bullets, pellets, or other missiles at a muzzle velocity of at least 600 feet per second; or

(2) A firearm

into any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure while it is occupied is guilty of a Class H felony.

N.C. Gen. Stat. § 14-34.1 (1984). The offense has four elements "(1) willfully and wantonly discharging (2) a [barreled weapon or] firearm (3) into property (4) while it is occupied," *State v.*

5

*Rambert*, 459 S.E.2d 510, 512 (N.C. 1995), and an additional *mens rea* requirement that the offender have "knowledge that the [property] is then occupied by one or more persons" or "reasonable grounds to believe that the [property] might be occupied by one or more persons," *State v. James*, 466 S.E.2d 710, 715 (N.C. 1996) (quoting *State v. Williams*, 199 S. E.2d 409, 412 (N.C. 1973). The North Carolina Court of Appeals has stated that "discharging a weapon into occupied property, like assault, is an offense against the person, and not against property," *State v. Fletcher*, 481 S.E. 2d 418, 423 (N.C. App. 1997), and "was enacted for the protection of occupants," *id.* (quoting *State v. Williams*, 204 S.E. 864, 865 (N.C. 1974)).

Petitioner argues that the offense cannot qualify as a violent felony under the use-of-physical-force clause because it (1) does not require the targeting of any particular person and (2) is capable of commission without ever putting an occupant in fear of physical pain or injury [Doc. 30 pp. 2–3; Doc. 37 pp. 1–4]. In other words, Petitioner admits that North Carolina General Statute § 14-34.1 invariably requires the use of force, but argues that at least some methods of committing the offense involve the use of such force "against property" as opposed to "the person of another" [*Id.*]. As support, Petitioner cites two Fourth Circuit decisions—*United States v. Parral-Dominguez*, 794 F.3d 440 (4th Cir. 2015), *and United States v. Mason*, 392 F. App'x 171 (4th Cir. 2010), both of which held that North Carolina discharge of a firearm into occupied property does not qualify under the ACCA's use-of-physical-force clause [*Id.*]. It is important to note, however, that this Court is not constrained by the Fourth Circuit's interpretation of North Carolina law and that independent review of applicable federal and state law lead it to conclude that the crime does in fact involve the use of force against the person of another and thus qualifies as violent felony under § 924(e)(2)(B)(i).

6

As an initial matter, Petitioner has failed to cite and this court is unaware of any Sixth Circuit authority which holds that an offender uses force "against the person of another" only when he or she exerts that force with a specific target in mind or puts someone in fear of physical injury. It is sufficient for purposes of § 924(e)(2)(B)(i) that the offender intentionally sets into motion, attempts to set into motion, or threatens to set into motion "a series of events that [he] knows will result in the application of a force capable of causing physical pain or injury to another," *United States v. Evans*, 699 F.3d 858, 864 (6th Cir. 2012), where another person exists for that force to be exerted against and under circumstances that the user knows or has reason to know could result in contact with that other person. Despite Petitioner's assertion to the contrary, the foregoing definition does nothing to transform the use-of-physical-force clause into a substitute for the now-defunct residual provision by including within its scope each and every crime which possess a serious risk of physical injury to another. Unlike the residual clause—where categorization hinged on the level of risk created and probability of harm to another, categorization under the use-of-physical-force clause depends on the intent of the user, nature of force exerted, and factual existence of another person for that force to be used against.

It is important to note that the above definition finds support in several cases which have found that statutes criminalizing the discharge of a firearm into an occupied vehicle categorically involve the use of violent force against the occupant or occupants of that vehicle. *See, e.g.*, *United States v. Wilkerson*, 492 F. App'x 447, 449 (4th Cir. 2012) (finding that North Carolina conviction for discharge of a firearm involved the use of force against the person of another), *and United States v. Curtis*, 645 F.3d 937, 941–942 (7th Cir. 2011) (finding that Illinois conviction for knowing and intentional discharge of firearm into a vehicle involved the use of force against the person of another). While at least three decisions—*United States v. Ruvalcaba*,

7

627 F.3d 218 (6th Cir. 2010), *United States v. Jaimes-Jaimes*, 406 F.3d 845 (7th Cir. 2005), and *United States v. Alfaro*, 408 F.3d 204 (5th Cir. 2005)—have refused to reach the same conclusion for statutes criminalizing discharge into a buildings, all three of the relevant provisions applied to buildings that were empty at the time of discharge. *See Ruvalcaba*, 627 F.3d at 222 (explaining that Ohio discharge of a firearm into an occupied dwelling did "not require the use of physical force against another" because "occupied dwelling" included structures that were empty at the time of discharge); *Jaimes-Jaimes*, 406 F.3d at 849–50 (finding that Wisconsin discharge of a firearm into a building involved the use of force against the building, not other persons); *Alfaro*, 408 F.3d at 209 (finding that Virginia discharge of a firearm into a building does not involve the use of force against another person because the offense could be committed by shooting into a building that was not in fact occupied).

Unlike the provisions in *Ruvalcaba*, *Jaimes-Jaimes*, and *Alfaro*, North Carolina General Statute § 14-34.1 requires that the targeted property be occupied, i.e., have people inside at the time of the offense, and that the offender know or have reason to know about that occupancy before he discharges the weapon. As Judge Wilkinson stated in dissent to *Parral-Dominguez*:

> [It is important to] understand what [North Carolina General Statute § 14-34.1] is not. The North Carolina statute does not cover the discharge of a firearm into an unoccupied building. It does not cover discharges into buildings that only contain valuable items. It does not shield buildings housing only livestock. Rather, it guards structures with people inside. . . . [and] North Carolina courts have explained [that] someone convicted of [the crime] was aiming at one of two possible targets: (1) a property occupied by another person, or (2) a person who evaded the bullet, which then ended up in an occupied property. . . . Under either scenario, the defendant deliberately shot in the direction of another person. Even if no one was actually struck, the defendant fired the bullet toward a location where he knew or believed another person to be.

794 F.3d at 452 (Wilkinson, J., dissenting); *see also State v. Wheeler*, 365 S.E.2d 609, 610–11 (N.D. 1988) (finding that firing at an occupied vehicle provided evidence that the defendant had

8

meant to shoot into that occupied vehicle); *State v. Wall*, 286 S.E.2d 68, 73–74 (N.D. 1982) ("It is an inherently incredible proposition that defendant could have intentionally fired a shot 'at' the fleeing [vehicle] without intending that the bullet go 'into' the vehicle."). It is this unique combination of elements—occupancy in fact and knowledge or reason to know of the same—that makes it impossible to commit the crime without the use, attempted to use, or threatened use of violent force against another. *Accord United States v. Womack*, 732 F.3d 745, 748–49 (7th Cir. 2013) (finding Illinois discharge of a firearm into an occupied building involved force against occupant where the offender knew about the occupancy).[2]

To the extent Petitioner argues in alternative that convictions under the North Carolina statute are incapable of being violent felonies under the use-of-physical-force clause because the crime "lacks an element of intentional conduct" [Doc. 37 pp. 5–6], he is mistaken. "Discharging a firearm into occupied property [requires] the intentional discharge of a firearm [at] an occupied building [or vehicle] with knowledge that such [property] is occupied or reasonable grounds to believe that the building might be occupied." *State v. Byrd*, 510 S.E.2d 410, 412 (N.C. App. 1999) (citing *Williams*, 199 S.E.2d at 412 and *Wheeler*, 365 S.E.2d at 610–11). Because the crime demands an intentional use of force—discharge of the firearm or barreled weapon, it is irrelevant that that the offender need only be reckless as to whether or not the bullet will ultimately enter the building and occupancy of the same. *Accord State v. McLean*, 712 S.E.2d

---

[2]  To the extent Petitioner points to the Tenth Circuit's decision in *United States v. Ford*, 613 F.3d 1363 (10th Cir. 2010), as a case in which another circuit has found that the discharge of a firearm into an occupied building was merely a use of force "against the property" [Doc. 37 p. 9], this Court disagrees that the intentional discharge of a firearm into property with an occupant inside by an individual with knowledge of such occupancy or reason to know of the same is anything other than an exertion of that same level of force against said occupant.

271, 278 (N.C. 2011) (describing the offense as "an intentional action . . . performed with the knowledge or reasonable grounds to believe the act would endanger the life or safety of others").

Because at least three prior convictions remain violent felonies under provisions left unaffected by the *Johnson* decision, Petitioner is not entitled to the requested collateral relief.

## V.    CERTIFICATE OF APPEALABILITY

Included in Petitioner's § 2255 motion is a request that this Court issue a certificate of appealability ("COA") should it deny collateral relief [Doc. 37 pp. 10–11].  Section 2253 permits issuance of a COA where "the applicant has made a substantial showing of the denial of a constitutional right" and requires that any certificate issued "indicate which specific issue or issues satisfy [that standard]." 28 U.S.C. §§ 2253(c)(2), (3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253 is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *see also Cox v. United States*, No. 1:00-cv-176, 2007 WL 1319270, at *1 (E.D. Tenn. May 4, 2007) (denying request for COA).

While review of applicable federal and state law lead this Court to conclude that violations of North Carolina General Statute § 14-34.1 invariably involve the use, attempted use, or threatened use of violent force against the person of another, its discussion of relevant circuit court opinions reveal that a diverse set of opinions exist on the issue.  Because this Court agrees that reasonable minds might disagree over the propriety of its conclusion, it will grant Petitioner's request for issuance of a COA.

## VI. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 petition [Docs. 30] will be **DENIED** and **DISMISSED WITH PREJUDICE**. Because this Court agrees that reasonable minds might disagree over the propriety of its conclusion, Petitioner's request a COA [Doc. 37 pp. 10–11] will be **GRANTED** on the limited issue of whether North Carolina discharge of a firearm into an occupied property invariably involves the use of force "against the person of another" under § 924(e)(2)(B)(i).

**AN APPROPRIATE ORDER WILL ENTER.**

ENTER:

s/ Leon Jordan
United States District Judge